No. 06-11C
(Judge Allegra)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

---

EVERGREEN AVIATION GROUND LOGISTICS ENTERPRISES, INC.,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

---

# DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

---

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

DONALD E. KINNER
Assistant Director

PAUL R. WELLONS
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit,
8th floor
1100 L Street, N.W.
Washington, D.C. 20530

Tel: (202) 616-8253
Fax: (202) 307-0972

March 6, 2006

Attorneys for Defendant

# TABLE OF CONTENTS

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . ii

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT . . . . . . . . . . . . 1

DEFENDANT'S BRIEF . . . . . . . . . . . . . . . . . . . . . . . 1

ISSUES PRESENTED . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . 2

I. NATURE OF THE CASE . . . . . . . . . . . . . . . . . . . 2

II. STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . 2

SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . 2

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

I. STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . 3

A. The Standard Of Review For Motions To Dismiss Pursuant to RCFC 12(b)(6) . . . . . . . . . . . . 3

B. The Standard For Summary Judgment . . . . . . . . 6

II EAGLE CANNOT DEMONSTRATE THAT IT IS ENTITLED TO A DECLARATORY JUDGMENT IN THIS CASE . . . . . . . . 8

A. The Reformed Contract, As Incorporated Into Plaintiff's Complaint, Explicitly States That USPS Is Not Obligated To Supply EAGLE With 1.25 Billion Pounds Of Mail Annually . . . 8

B. The Reformed Contract Is An Indefinite Quantity Contract In Which EAGLE Assumed The Risk That USPS Would Not Supply The Estimated Quantity . . . . . . . . . . . . . . . . . . . . 10

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . 16

# TABLE OF AUTHORITIES

## CASES

A.L. Mechling Barge Lines, Inc. v. United States,
368 U.S. 324 (1968) . . . . . . . . . . . . . . . . . . . . . 3

Abatement Constr. Corp. v. United States,
58 Fed. Cl. 594 (2003) . . . . . . . . . . . . . . . . . . . . 13

Alliant Techsystems, Inc. v. United States,
178 F.3d 1260 (Fed. Cir. 1999) . . . . . . . . . . . . . . . 3

Anderson v. Liberty Lobby, Inc.,
477 U.S. 242 (1986) . . . . . . . . . . . . . . . . . . . . . 6

B & F Trawlers, Inc. v. United States,
27 Fed. Cl. 299 (1992) . . . . . . . . . . . . . . . . . . . . 4

Ball State Univ. v. United States,
488 F.2d 1014 (Ct. Cl. 1973) . . . . . . . . . . . . . . 8, 10

Celotex Corp. v. Catrett,
477 U.S. 317 (1986) . . . . . . . . . . . . . . . . . . . . . 6

City of Takoma, Dep't. of Pub. Util. v. United States,
31 F.3d 1130 (Fed. Cir. 1994) . . . . . . . . . . . . . . . . 7

Conley v. Gibson,
355 U.S. 41 (1957) . . . . . . . . . . . . . . . . . . . . . . 3

Cortec Indus., Inc. v. Sum Holding L.P.,
949 F.2d 42 (2d Cir. 1991) . . . . . . . . . . . . . . . . . 5

Deal v. United States,
3 Cl. Ct. 151 (1983) . . . . . . . . . . . . . . . . . . . . . 8

Dot Sys., Inc. v. United States,
231 Ct. Cl. 765 (1982) . . . . . . . . . . . . . . . . . . . 12

Fortec Constr. v. United States,
760 F.2d 1288 (Fed. Cir. 1985) . . . . . . . . . . . . . . . 7

Glaxo Ops. UK Ltd. v. Quigg,
894 F.2d 392 (Fed. Cir. 1990) . . . . . . . . . . . . . . . . 7

Hemet Valley Flying Serv. Co. v. United States,
7 Cl. Ct. 512 (1985) . . . . . . . . . . . . . . . . . . . 11

Hol-Gar Mfg. Corp. v. United States,
351 F.2d 972 (Ct. Cl. 1965) . . . . . . . . . . . . . . . . . . 7

I. Meyer Pincus & Assocs., P.C. v. Oppenheimer & Co.,
936 F.2d 759 (2d Cir. 1991) . . . . . . . . . . . . . . . . . . 5

Kinne v. United States,
21 Cl. Ct. 104 (1990) . . . . . . . . . . . . . . . . . . . . . 4

Marshall v. United States,
21 Cl. Ct. 497 (1990) . . . . . . . . . . . . . . . . . . . . . 4

Mason v. United States,
222 Ct. Cl. 436, 615 F.2d 1343 (1980) . . . . . . . 10, 11, 12

Medart, Inc. v. Austin,
967 F.2d 579 (Fed. Cir. 1992) . . . . . . . . . . . . . . 8, 10

Mingus Constr., Inc. v. United States,
812 F.2d 1387 (Fed. Cir. 1987) . . . . . . . . . . . . . . . . 6

Pacificorp Capital, Inc. v. United States,
25 Cl. Ct. 707 (1992) . . . . . . . . . . . . . . . . . . . 7, 11

Papasan v. Allain,
478 U.S. 265 (1986) . . . . . . . . . . . . . . . . . . . . . . 4

Ralph Constr., Inc. v. United States,
4 Cl. Ct. 727 (1984) . . . . . . . . . . . . . . . . . . . 10, 11

Rochman v. United States,
27 Fed. Cl. 162 (1992) . . . . . . . . . . . . . . . . . . . . 4

State of Montana v. United States,
33 Fed. Cl. 82 (1995) . . . . . . . . . . . . . . . . . . . . . 5

Sweats Fashions, Inc. v. Pannill Knitting Co., Inc.,
833 F.2d 1560 (Fed. Cir. 1987) . . . . . . . . . . . . . . . . 6

Textron Def. Sys. v. Widnall,
143 F.3d 1465 (Fed. Cir. 1998) . . . . . . . . . . . . . . . . 7

Torncello v. United States,
231 Ct. Cl. 20, 681 F.2d 756 (1982) . . . . . . . . . . . . 11

Travel Centre v. Barram,
236 F.3d 1316 (2001) . . . . . . . . . . . . . . . . . 11, 12, 16

United Med. Supply Co. v. United States,
63 Fed. Cl. 430 (2005) . . . . . . . . . . . . . . 6, 8, 10, 14

Veit & Co., Inc. v. United States,
56 Fed. Cl. 30 (2003) . . . . . . . . . . . . . . . . . 7, 11

Webco Lumber, Inc. v. United States,
230 Ct. Cl. 457, 677 F.2d 860 (1982) . . . . . . . . . . . . 8

Wright v. Associated Ins. Co.,
29 F.3d 1244 (7th Cir. 1994) . . . . . . . . . . . . . . . . . 5

**STATUTES**

28 U.S.C. 1491(a)(2) . . . . . . . . . . . . . . . . . . . . . . 4

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| EVERGREEN AVIATION GROUND LOGISTICS ENTERPRISES, INC., | ) |
| Plaintiff, | ) |
| v. | ) No. 06-11C (Judge Allegra) |
| THE UNITED STATES, | ) |
| Defendant. | ) |

DEFENDANT'S MOTION TO DISMISS OR,
IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

Defendant, the United States, pursuant to RCFC 12(b)(6) and 56, respectfully request that the Court grant the Government's motion to dismiss or, in the alternative, for summary judgment. In support of this motion, we rely upon the complaint, the following brief, defendant's proposed findings of uncontroverted fact, and the parties' contracts.

DEFENDANT'S BRIEF

ISSUES PRESENTED

1. Whether plaintiff's complaint states a claim upon which relief can be granted when the complaint and its attachments establish that defendant did not guarantee plaintiff 1.25 billion pounds of mail for processing annually.

2. Whether the Government is entitled to summary judgment regarding plaintiff's complaint for declaratory relief when the parties formed an indefinite quantity contract in which plaintiff

assumed the risk that USPS would not supply the estimated quantity.

## STATEMENT OF THE CASE

### I. NATURE OF THE CASE

Plaintiff, Evergreen Aviation Ground Logistics Enterprises, Inc. ("EAGLE"), provides ground logistics and other transportation-related services to the United States Postal Service ("USPS" or the "Postal Service"). EAGLE alleges that USPS has provided EAGLE with less than the amount of mail EAGLE claims is specified in the parties' contract.

### II. STATEMENT OF FACTS

For our statement of facts, we rely upon our proposed findings of uncontroverted fact, which accompanies this motion.

## SUMMARY OF THE ARGUMENT

The plain terms of the parties' contracts (collectively referred to as the "Reformed Contract"), as quoted in plaintiff's complaint, demonstrate that USPS did not guarantee EAGLE 1.25 billion pounds of mail for processing annually. Instead, the Reformed Contract plainly states that USPS identified an estimated quantity of mail. Further, because the Reformed Contract is an indefinite quantity contract, EAGLE assumed the risk that USPS would not supply the estimated quantity of mail.

## ARGUMENT

### I. STANDARD OF REVIEW

#### A. The Standard Of Review For Motions To Dismiss Pursuant To Rule 12(b)(6)

This Court possesses limited jurisdiction to provide declaratory judgments regarding certain nonmonetary disputes on which a contracting officer has issued a final decision. 28 U.S.C. § 1491(a)(2). However, this Court possesses discretion regarding whether it is appropriate to grant declaratory relief and may restrict such relief to instances "involving a fundamental question of contract interpretation or a special need for early resolution of a legal issue." Alliant Techsystems, Inc. v. United States, 178 F.3d 1260, 1270 (Fed. Cir. 1999); see also A.L. Mechling Barge Lines, Inc. v. United States, 368 U.S. 324, 331 (1968) ("Declaratory judgment is a remedy committed to judicial discretion."). It is particularly appropriate for the Court to exercise its discretion to deny EAGLE's request in this case, where EAGLE's complaint demonstrates that EAGLE is not entitled to the relief it seeks, and the Government is entitled to summary judgment regarding EAGLE's claims.

In considering whether to dismiss a complaint for failure to state a claim upon which relief can be granted, this Court will grant dismissal only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which

would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957), quoted in B & F Trawlers, Inc. v. United States, 27 Fed. Cl. 299, 302 (1992); Kinne v. United States, 21 Cl. Ct. 104, 107 (1990). In making this decision, the Court will accept the factual allegations set forth in the complaint as true. E.g., Papasan v. Allain, 478 U.S. 265, 268 (1986); B & F Trawlers, 27 Fed. Cl. at 302; Marshall v. United States, 21 Cl. Ct. 497, 499 (1990). However, the Court should not place any weight upon any assertions in the complaint other than allegations of fact, since "legal conclusions, deductions, or opinions couched as factual allegations are not given a presumption of truthfulness." Rochman v. United States, 27 Fed. Cl. 162 (1992) (quoting 2A J. Moore, Moore's Federal Practice, ¶ 12.07 [2.-5], at 12-84 to -85 (2d ed. 1995)).

In identifying the facts it can consider in ruling upon defendant's motion to dismiss pursuant to RCFC 12(b)(6), the Court should examine and consider any and all information contained in the documents that EAGLE attached to its complaint. “A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes.” RCFC 10(c). Accordingly, material "which is submitted as part of the complaint," or is attached thereto, "may be considered by the court" as a part of the pleadings for purposes of dismissal pursuant to RCFC 12(b)(6). 2A J. Moore, supra, ¶ 12.07 [2.-5],

at 12-90 to -91; see C. Wright & A. Miller, Federal Practice & Procedure § 1327, at 761, 764-66 (2d ed. 1990).

Finally, as an attachment to our motion to dismiss, we include a copy of the entirety of the parties' contract. Even though the plaintiff only attached portions of this contract to its complaint, the Court can consider the entirety of the contract without converting our motion to one for summary judgment. "[D]ocuments attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim." Wright v. Associated Ins. Co., 29 F.3d 1244, 1248 (7th Cir. 1994); see State of Montana v. United States, 33 Fed. Cl. 82, 88 n.4 (1995); Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47 (2d Cir. 1991).

Although EAGLE has referenced in its complaint, and attached to its complaint, only portions of the contract at issue, its reliance in the complaint on a portion of the contract entitles us to rely upon the entirety of it without converting this motion into one for summary judgment. See I. Meyer Pincus & Assocs., P.C. v. Oppenheimer & Co., 936 F.2d 759, 762 (2d Cir. 1991).

B. The Standard For Summary Judgment

In the alternative, summary disposition is appropriate where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.” United Med. Supply Co. v. United States, 63 Fed. Cl. 430, 435 (2005); see RCFC 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-52 (1986); Mingus Constr., Inc. v. United States, 812 F.2d 1387, 1390 (Fed. Cir. 1987). Summary judgment is "a salutary method of disposition 'designed to secure the just, speedy and inexpensive determination of every action.'" Sweats Fashions, Inc. v. Pannill Knitting Co., Inc., 833 F.2d 1560, 1562 (Fed. Cir. 1987) (quoting Celotex Corp. v. Catrett, 477 U.S. 317 (1986)).

As the court of appeals emphasized in Sweats Fashions, "the burden is not on the movant to produce evidence showing the absence of a genuine issue of material fact." 833 F.2d at 1563 (emphasis in original). Rather, "the burden on the moving party may be discharged by 'showing'--that is, pointing out to the [Court of Federal Claims]--that there is an absence of evidence to support the non-moving party's case." Id. (emphasis in original) (quoting Celotex Corp., 477 U.S. at 325).

A "material fact" is one "that might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248. "[S]ummary judgment will not lie if the dispute about a material

fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

It is well-established that summary judgment is particularly appropriate where matters of contract interpretation are concerned. E.g., Textron Def. Sys. v. Widnall, 143 F.3d 1465, 1468 (Fed. Cir. 1998); Glaxo Ops. UK Ltd. v. Quigg, 894 F.2d 392, 395 (Fed. Cir. 1990). In ruling upon a motion for summary judgment based upon the unambiguous terms of a contract, the Court may not consider extrinsic evidence to alter the contract's terms: "Only when the language of a contract is ambiguous will factors outside the contract terms be taken into account." Pacificorp Capital, Inc. v. United States, 25 Cl. Ct. 707, 716 (1992); Veit & Co., Inc. v. United States, 56 Fed. Cl. 30, 42 (2003) (granting summary judgment where "[t]here is an absence of evidence within the four corners of the unambiguous document itself to support the plaintiff's case."); City of Takoma, Dep't. of Pub. Util. v. United States, 31 F.3d 1130, 1134 (Fed. Cir. 1994) (citation omitted).

In interpreting a contract, the Court must read the contract as a whole in order to give a reasonable meaning to all of its parts. Fortec Constr. v. United States, 760 F.2d 1288, 1292 (Fed. Cir. 1985); Hol-Gar Mfg. Corp. v. United States, 351 F.2d 972, 979 (Ct. Cl. 1965). The Court should not adopt a reading that renders portions of the contract inoperable or superfluous.

Ball State Univ. v. United States, 488 F.2d 1014, 1016 (Ct. Cl. 1973).

## II. EAGLE CANNOT DEMONSTRATE THAT IT IS ENTITLED TO A DECLARATORY JUDGMENT IN THIS CASE

### A. The Reformed Contract, As Incorporated Into Plaintiff's Complaint, Explicitly States That USPS Is Not Obligated To Supply EAGLE With 1.25 Billion Pounds Of Mail Annually

The Court repeatedly has held that estimates of anticipated volumes do not create guarantees. E.g., Medart, Inc. v. Austin, 967 F.2d 579, 581 (Fed. Cir. 1992) ("Accordingly, estimated quantities are not guarantees or warranties of quantity.") (citation omitted); Webco Lumber, Inc. v. United States, 230 Ct. Cl. 457, 677 F.2d 860, 863 (1982) ("The government's estimates of the amount of recoverable timber under this contract were not warranties. They merely were estimates, and the government unequivocally disclaimed making any warranties."); United Med. Supply Co., 63 Fed. Cl. at 438 (finding that plaintiff had engaged in a "backhanded attempt to impose liability on defendant based upon the difference between the estimates and the amounts actually purchased under the contract. That this court will not do."); Deal v. United States, 3 Cl. Ct. 151, 159 (1983) ("Indeed, the cumulative effect of the above statements was to alert all prospective bidders that the volumes were estimates only, and that to be on the safe side they should make an inspection of the

area and form their own opinions regarding the volume of timber involved.”).

In this case, EAGLE claims that “USPS is in material breach of its obligations to provide the promised amounts of mail to EAGLE.” Compl. ¶ 1. However, nothing in the Reformed Contract states that USPS promised to provide EAGLE mail for handling at a rate of 1.25 billion pounds annually. In fact, the Reformed Contract explicitly states the opposite.

Section A of the Reformed Contract, which plaintiff quotes in paragraph 8 of its complaint and incorporates as part of Attachment C to the complaint, renders it clear that USPS only provided estimates of mail volume to EAGLE: “The parties anticipate that the Postal Service will provide to the THS approximately 1.25 billion pounds of mail during each calendar year of the three contracts (SNET-01-GLR, SNET-01-PR, SNET-0l-SER) and that the annual contract compensation for 1.25 billion pounds is estimated to be approximately $46.8 million, including fixed and variable costs.” A 4.[1]

In fact, as quoted in the complaint, the parties explicitly “recognize that the Postal Service does not guarantee a minimum weight of mail will be provided to the THS, and does not guarantee that annual compensation will total $46.8 million

---

[1] “A __” refers to parties’ Reformed Contract, filed as the appendix to defendant’s brief.

dollars. Actual compensation will vary according to the actual weight and density of mail provided to the THS in accordance with Sections A.1.b through A.1.j." A 4.

Thus, this Court should apply the plain terms of the Reformed Contract and deny EAGLE's request for declaratory relief. Medart, Inc. v. Austin, 967 F.2d at 581; United Med. Supply Co., 63 Fed. Cl. at 438. Further, to ignore the Reformed Contract's plain statement that USPS does not guarantee EAGLE 1.25 billion annual pounds would rewrite the parties' contract, impermissibly rendering that portion of the parties' agreement meaningless. Ball State Univ., 488 F.2d at 1016.

For these reasons, the Court should grant the Government's motion to dismiss or, in the alternative, motion for summary judgment and should deny EAGLE's request for a declaratory judgment.

### B. The Reformed Contract Is An Indefinite Quantity Contract In Which EAGLE Assumed The Risk That USPS Would Not Supply The Estimated Quantity

"Generally speaking, where services are to be provided to the Government, the contract must be one of three possible types[:] definite quantity, requirements, or indefinite quantity." Mason v. United States, 222 Ct. Cl. 436, 615 F.2d 1343, 1347 (1980).

Defining a contract is a question of law, and the Court will examine the legal rights bargained for by the parties in order to

classify their agreement; the Court is not bound by the label--or lack of label--provided by the parties. Ralph Constr., Inc. v. United States, 4 Cl. Ct. 727, 731 (1984) (citing Torncello v. United States, 231 Ct. Cl. 20, 681 F.2d 756, 760 (1982)); Mason, 222 Ct. Cl. 436, 615 F.2d at 1346-47.

EAGLE does not indicate in its complaint whether it believes that the Reformed Contract was a definite quantity, requirements, or indefinite quantity contract. In fact, the Court need not classify the Reformed Contract in order to determine that the agreement's plain terms preclude EAGLE's requested relief. Pacificorp Capital, Inc., 25 Cl. Ct. at 716; Veit & Co., Inc., 56 Fed. Cl. at 42. Nevertheless, the plain terms of the Reformed Contract demonstrate that it is an indefinite quantity contract in which EAGLE assumed the risk that USPS would not supply the estimated quantity of mail for handling.

In indefinite quantity contracts, the Government "will purchase an indefinite quantity of supplies or services from a contractor" at the Government's election. Travel Centre v. Barram, 236 F.3d 1316, 1319 (Fed. Cir. 2001). To prevent such a contract from being illusory, the Government generally must guarantee a certain minimum payment or minimum order to the seller. Id. (holding that $100 guaranteed payment was sufficient consideration to create enforceable indefinite quantity contract); Hemet Valley Flying Serv. Co. v. United States, 7 Cl.

Ct. 512, 516 (1985) ("Rather, the contract is determined to be one for an indefinite quantity with a sufficient purchase requirement for 'availability' of the tankers to render it enforceable."); Mason, 222 Ct. Cl. 436, 615 F.2d at 1347 (holding that $5,000 guaranteed minimum payment was sufficient consideration to render contract an enforceable indefinite quantity contract).

In an indefinite quantity contract, the contractor assumes the risk that the Government may not purchase the estimated quantity:

> The general rule is clear: a contractor cannot sign a contract which allocates the risk of loss to it and then 4 years later come to this court, having lost its gamble, and insist that the risk be placed on the Government . . . . The present contract is not a requirements contract; it is an indefinite quantity contract. This distinction is crucial to an understanding of the parties' legitimate expectations and their responsibilities. The contractor here cannot expect the kind of accuracy in estimation that it can in a requirements or fixed price contract. By the same token, the Government cannot be held to the negligence standard for requirements contracts . . . .

Dot Systs., Inc. v. United States, 231 Ct. Cl. 765, 768-69 (1982).

That the Reformed Contract is an indefinite quantity contract is beyond dispute. As noted, it provides for USPS to purchase "an indefinite quantity of supplies or services" from EAGLE. Travel Centre, 236 F.3d at 1319. Further, the minimum consideration required for an indefinite quantity contract is

provided in at least two ways. First, USPS guarantees EAGLE reimbursement of $6,363,991.40 for fixed costs regardless of whether EAGLE ever has to process a single ounce of mail. A 4, 7.

Second, although USPS is entitled to an “absorption” reduction in variable cost payments when EAGLE processes a lower than anticipated mail volume, USPS guarantees payment for a minimum volume of mail. This minimum equals 20 percent of a designated baseline weight for each air stop covered by the contract: “If the average daily weight is more than 20% below the average daily designated baseline weight during any schedule period, the Postal Service will be entitled to a reduction for each pound less than eighty percent (80%) of the average daily designated baseline weight.” A 5; Compl. ¶ 17.

A simple illustration demonstrates how USPS guarantees payment to EAGLE for a minimum volume of mail. For Los Angeles International Airport (“LAX”), EAGLE’s baseline is 320,842 pounds per day (164,777 pounds of originating mail and 156,065 pounds of destinating mail). A 67. The variable cost to which EAGLE is entitled for LAX pursuant to section A.2.b of the Reformed Contract is $0.041. A 8. This yields a daily payment of $13,154.52. When applied over 26 two-week billing periods of 12 days each, this yields annual payments of $4,104,210.86. Even if it never has to process an ounce of mail at LAX, EAGLE

is guaranteed 20 percent of this amount, or $820,842.17, for that air stop alone.

To the extent that EAGLE attempts to argue that it did not assume the risk of an indefinite quantity contract, EAGLE is wrong. EAGLE cannot demonstrate that it formed a definite quantity contract in which the Government contracted "for delivery of a definite quantity of [1.25 billion pounds of] supplies or services, with deliveries to be scheduled as ordered by the government." Abatement Constr. Corp. v. United States, 58 Fed. Cl. 594, 603 (2003). After all, the plain terms of the agreement expressly provide that "the Postal Service does not guarantee a minimum weight of mail will be provided to the THS, and does not guarantee that annual compensation will total $46.8 million dollars." A 4. In fact, under its tortured interpretation of the Reformed Contract, EAGLE acknowledges that USPS had no obligation to supply 1.25 billion pounds of mail annually unless "it was able to do so." Compl. ¶ 1.

Nor can EAGLE rescue its claims by attempting to classify the Reformed Contract as a requirements contract. Under limited circumstances, a plaintiff may seek recovery for allegedly negligent estimates set forth in a requirements contract. United Med. Supply Co., 63 Fed. Cl. at 435. However, EAGLE has not pled such damages in its complaint, which seeks only declaratory relief. Moreover, the Reformed Contract lacks the

characteristics of a requirements contract. A requirements contract "calls for the government to fill all its actual requirements for specified supplies or services during the contract period by purchasing from the awardee, who agrees to provide them at the agreed price." Id. at 435-36 (citation omitted). Thus, "a requirements contract necessarily obligates the Government to purchase exclusively from a single source." Id. at 436 (citation omitted). However, nothing in the contract before the Court imposes such an obligation upon USPS regardless of how much mail is "available."

To the contrary, the Reformed Contract contemplates that USPS may rely upon multiple suppliers to fulfill its mail handling needs. For example, section B.2. of the Reformed Contract, labeled "Background," explains:

> The Postal Service determined that it would acquire the additional integrated material handling capabilities through a competitive outsourcing to qualified suppliers under Solicitation HQ-2001-12, which resulted in a contract between the Postal Service and the terminal handling supplier (referred to throughout the contract documents as "the supplier" or "the THS.").

A 11.

Similarly, section G-10 of the "Special Clauses" portion of the contract prohibits EAGLE from committing "any act that will interfere with the performance of work by any other supplier or by Postal Service employees." A 63. These reference to USPS's reliance upon multiple suppliers indicates that USPS retained the

right to purchase mail handling services from sources other than EAGLE. See, e.g., Travel Centre, 236 F.3d at 1319 (finding that a reference to the appellant as a "preferred source" necessarily meant that government agencies "could, but are not required to" purchase the appellant's services).

Because the Reformed Contract is an indefinite quantity contract in which EAGLE assumed the risk that the Government would not purchase the estimated quantity, its request for declaratory relief should be denied, and the Court should grant our motion for summary judgment.

## CONCLUSION

For these reasons, we respectfully request that the Court grant defendant's motion to dismiss or, in the alternative, for summary judgment.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ DONALD E. KINNER
DONALD E. KINNER
Assistant Director

s/ PAUL R. WELLONS
PAUL R. WELLONS
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit,
8th floor
1100 L Street, N.W.
Washington, D.C. 20530
Tel: (202) 616-8253
Fax: (202) 307-0972

Attorneys for Defendant

OF COUNSEL:

MICHAEL F. KIELY
Law Department
United States Postal Service
Washington, D.C. 20260

March 6, 2006

CERTIFICATE OF FILING

I hereby certify that on March 6, 2006, a copy of the foregoing "MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ PAUL R. WELLONS