IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| EVERGREEN AVIATION GROUND LOGISTICS ENTERPRISES, INC., Plaintiff, | |
| v. | No. 06-11C<br>Allegra, J. |
| UNITED STATES, Defendant. | |

AFFIDAVIT OF BRIAN T. BAUER

County of Yamhill )
) ss:
State of Oregon )

The affiant, Brian T. Bauer, being duly sworn, states as follows:

1. I am currently the Chairman of the Board of Evergreen Aviation Ground Logistics Enterprises, Inc. (EAGLE), and President of Evergreen International Airlines, which is a sister company to EAGLE. From 2001 through November 2005, I was the President of EAGLE. My offices are at Evergreen's headquarters in McMinnville, Oregon.

2. As part of my duties, I have had direct contact with USPS representatives concerning the Shared Network (SNET) contract from its beginning up until the present. I have had frequent communications with USPS personnel concerning contractual and performance issues of the SNET contract. I have firsthand knowledge of what I state in this affidavit.

3. I have read the Affidavit of Daniel G. Bonham, EAGLE's Director of Marketing, that is to be submitted in this case and is dated March 15, 2006. I agree with and affirm all of the statements made by Mr. Bonham in his affidavit. Because I was the EAGLE executive who made the final decisions concerning the Reformed Contract, I wanted to add a few additional comments.

4. The impetus for, and purpose of, the major amendment of the SNET contract in 2003 was to provide a commitment of additional mail to EAGLE (and resulting additional income) to justify the substantial expansion of plant, equipment, and personnel that EAGLE had put in place right after performance began under the Initial Contract. I made that point repeatedly to USPS personnel during our multi-month negotiations that led to the Reformed Contract.

5. During my conversations with USPS personnel during multiple meetings, telephone calls, and written correspondence concerning reformation of the Initial Contract, it was repeatedly expressed to me by USPS representatives – from Mr. Dwight Young, the head of USPS's Transportation Purchasing Department, on down – that USPS was committing to provide EAGLE, in addition to the FedEx volumes EAGLE was already handling, additional mail to reach a level of 1.25 billion pounds per year. That commitment of additional tonnage was the whole basis of the deal. Never did any USPS representative tell me that, under the Reformed Contract terms as drafted, USPS had the option to give EAGLE less than that amount if it were available or to give EAGLE whatever amounts of mail it desired.

6. It was always understood by me in my communications with USPS personnel that, because of the way USPS does business, USPS cannot be sure that customers will actually supply any given amount of mail to USPS to carry. However, USPS representatives repeatedly confirmed to me that they anticipated having the 1.25 billion pounds of mail per year to provide to EAGLE, and we at EAGLE had the understanding that USPS currently had that much mail in its air and ground networks to support that rate of mail.

7. Section A.1.a as drafted in its final form by USPS included "no guarantee" language. When I read that final version of the section prior to my signing the Reformed Contract, I understood the section to make explicit that USPS could not guarantee that 1.25 billion pounds of mail would be provided by its customers, but that we both still anticipated that they would do so and that USPS committed to provide that amount of mail if it were available in its air and ground networks. Mr. Bonham had a conversation with Mr. Black of USPS about this very point, and Mr. Bonham reported to me that Mr. Black had confirmed that I was understanding the purpose of the "no guarantee" language added by USPS correctly.

8. I know what an IDIQ contract is. I did not consider the Reformed Contract to be an IDIQ contract, and no USPS representative ever said to me prior to my signing that USPS considered the Reformed Contract to be an IDIQ contract. I would not have agreed to the Reformed Contract if I had been told that it gave USPS the option to choose to give EAGLE however much mail USPS determined or, for that matter, to continue to give EAGLE only FedEx volumes (even if EAGLE still

was to have gotten its fixed payments and payments for 20% of the baseline payments for variable costs even if it handled no mail). The suggestion that the Reformed Contract is an IDIQ contract is inconsistent with the whole purpose of the negotiations to give EAGLE a larger, more assured level of revenue to support its expanded SNET investment in people, plant, and equipment.

9. In summary, I understood that EAGLE was taking the risk that USPS's customers would not supply mail to it at a rate of 1.25 billion pounds per year, but I understood that risk to be minimal. EAGLE did not agree to take the risk that USPS would simply decide to handle mail in other ways, whether by itself or by using other contractors, especially when it would be so easy for USPS to game the 20% "free zone" of the absorption collar. Taking such a risk would have been foolhardy and unacceptable to EAGLE.

Further affiant saith not.

Brian T. Bauer

Sworn to and subscribed
before me on this 16th
day of March 2006.

Mona Lowery
Notary Public
State of Oregon
County of Yamhill

OFFICIAL SEAL
MONA LOWERY
NOTARY PUBLIC - OREGON
COMMISSION NO. 384968
MY COMMISSION EXPIRES SEPTEMBER 21, 2008