IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| EVERGREEN AVIATION GROUND LOGISTICS ENTERPRISES, INC.,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | No. 06-11C<br>(Judge Allegra) |

EAGLE'S RESPONSE TO DEFENDANT'S
PROPOSED FINDINGS OF UNCONTROVERTED FACT

EAGLE provides this response to Defendant's Proposed Findings of Uncontroverted Fact. EAGLE also relies in response on its own Proposed Findings in support of its Cross-motion for Summary Judgment, filed contemporaneously (referred to as "FF").

1. Plaintiff, Evergreen Aviation Ground Logistics Enterprises, Inc. ("EAGLE"), provides logistical transportation-related services to the Government and commercial customers. Compl. ¶ 3.

RESPONSE: Agreed.

2. In 2001, EAGLE and the United States Postal Service ("USPS" or the "Postal Service") formed three contracts by which EAGLE agreed to perform mail-handling services for USPS: contract numbers SNET-01-PR, SNET-01-SER, and SNET-01-GLR. Compl. ¶ 5, A 4. These contracts had a beginning dates [sic] of August 27, 2001 and an expiration date of August 26, 2006, with three one-year options available to USPS. Compl. ¶ 5.

RESPONSE: Agreed, with the further explanation that the three contracts were consolidated into one contract document. (FF ¶ 9.)

3. Under the contracts, EAGLE provided services supporting USPS's air transportation network. For outgoing mail, these services included scanning

and loading the mail from USPS equipment into containers provided by the air carrier transporting the mail for USPS. A 12. For incoming mail, these services included unloading the mail from air containers, scanning it, and separating for local delivery. A 12. EAGLE provided these services at 23 airports across the United States. A 8.

RESPONSE: While the statements are accurate, the appropriate record references are to the Initial Contract, not to the Reformed Contract. (FF, Attach. A (Bonham Aff.) ex. 1 at 2.)

4. In early 2003, EAGLE and USPS amended their contracts. The amended agreements (collectively referred to as the "Reformed Contract"), which include mail-handling services in support of the Postal Service's ground network, has an effective date of March 1, 2003, and the same ending date and option periods as before. Compl. ¶ 7.

RESPONSE: Agreed, except for “In early 2003.” The Reformed Contract was actually executed in August 2003 by the parties. (A l; FF ¶ 54.)

5. Under the Reformed Contract, EAGLE provides material handling services in support of the Postal Service's air and ground networks at 23 airports in three geographic regions: the Southeast, the Great Lakes, and the Pacific. A 11, 14, 67. The material handling services consist of unloading express, priority, and first-class mail at the destination airports after air transport, then scanning the mail and sorting it for delivery to local processing and distribution centers; and, second, receiving delivery of express, priority, and first-class mail from local processing and distribution centers, scanning it, sorting it by destination airport, and placing it into containers for air transport. A 11, 14, 67.

RESPONSE: Agreed, except the Reformed Contract does not limit the type of mail to Express, Priority, and First-Class. Section B.5.b(1) as amended in the Reformed Contract states in relevant part, “The integrated material handling services to be purchased are primarily intended to support Express, Priority and First Class Mail.” (FF ¶ 50; A 13.)

6. The Reformed Contract states:

> The purpose of these performance based service contracts is for the Postal Service to purchase and the Terminal Handling Supplier (THS) to provide integrated material handling services in support of the United States Postal Service's air and ground networks. The parties anticipate that the Postal Service will provide to the THS approximately 1.25 billion pounds of mail during each calendar year of the three contracts (SNET-01-GLR, SNET-01-PR, SNET-01-SER) and that the annual contract compensation for 1.25 billion pounds is estimated to be approximately $46.8 million, including fixed and variable costs. However, the parties recognize that the Postal Service does not guarantee a minimum weight of mail will be provided to the THS, and does not guarantee that annual compensation will total $46.8 million dollars. Actual compensation will vary according to the actual weight and density of mail provided to the THS in accordance with Sections A.1.b through A.1.j.

A 4.

RESPONSE: Agreed that this is quoted accurately, except the paragraph lettering has been deleted between the first and second sentences as quoted above. The THS is EAGLE. (FF ¶ 11; A 4.)

7. The Reformed Contract also states: "The Supplier shall be compensated for its mail handling service pursuant to the density-based adjusting scale (the sliding scale). The per pound price by air stop is shown on schedule A.2.b." A 4. Under the Reformed Contract, "[v]ariable cost compensation for a schedule period by air stop will be based upon the baseline weight per schedule period multiplied by the sliding scale price per pound using actual air stop density." A 4-5.

RESPONSE: Agreed that these are accurate quotations of part of section A.1.c. of the Reformed Contract.

8. The Reformed Contract provides that EAGLE is guaranteed a minimum payment for fixed costs of $6,363,991.40. A8. EAGLE receives this payment in 26 bi-weekly installments: "The Postal Service shall pay the Supplier one twenty-sixth (1/26) of the agreed upon annual price as defined in schedule A.2.a

to compensate the supplier for its fixed costs for all three contracts." A 4. Attachment A of the Reformed Contracts contains the baseline weight for each airstop, which is divided into "originating pounds" for outgoing mail and "destinating pounds" for incoming mail. A 66.

RESPONSE: With respect to the first sentence, agreed that the contractual amount for fixed costs is stated accurately but denies that the Reformed Contract identifies it as "guaranteed" or as a "minimum payment," which it is not; it is the payment specified. (A 8.) With respect to the second and third sentences, agreed that the contract text is quoted accurately in part and that the summary statements are accurate.

9. USPS also pays EAGLE for handling mail. USPS guarantees payment to EAGLE for a minimum volume of mail equal to at least 20 percent of a designated baseline weight for each air stop covered by the Reformed Contract: "If the average daily actual weight is more than 20% below the average daily designated baseline weight during any schedule period, the Postal Service will be entitled to a reduction for each pound less than eighty percent (80%) of the average daily designated baseline weight." A 5.

RESPONSE: Agreed that section A.1.d is quoted accurately, but only in part and except that "schedule" should read "scheduled." Agreed that USPS pays EAGLE for handling mail. Denied that the Reformed Contract identifies the absorption provisions as a "guarantee" for a "minimum volume," which words nowhere appear in the text. (A 5.) This paragraph as stated leaves out the more relevant facts concerning section A.1.d, *i.e.*, that it creates a 20% "free zone" that USPS could manipulate if it lacked a duty to supply EAGLE with the specified amount of mail if it were available. (FF ¶¶ 60-62.)

10. Section B.2 of the Reformed Contract, labeled "Background," states:

> The Postal Service determined that it would acquire the additional integrated material handling capabilities

> through a competitive outsourcing to qualified suppliers under Solicitation HQ-2001-12, which resulted in a contract between the Postal Service and the terminal handling supplier (referred to throughout the contract documents as "the supplier" or "the THS.").

A 11.

RESPONSE: Agreed that this is an accurate quotation of part of section B.2.a. of the Reformed Contract. (See also FF ¶ 53.)

11. Section G.10 of the Reformed Contract prohibits EAGLE from committing "any act that will interfere with the performance of work by any other supplier or by Postal Service employees." A 63.

RESPONSE: Agreed that this is an accurate quotation of part of section G.10 of the Reformed Contract, with the explanation that “supplier” in this section refers to mail transportation suppliers, not terminal handling suppliers. (FF ¶ 52.)

12. On October 25, 2005, EAGLE requested a final decision from USPS that USPS had an "obligation under the Reformed Contract to provide EAGLE with approximately 1.25 billion pounds of mail annually if such mail was available from its air and ground networks in the regions covered by the Reformed Contract." Compl. ¶ 15. EAGLE also requested a final decision that USPS was in material breach by failing to supply 1.25 billion pounds of mail annually for handling. Compl. ¶ 15.

RESPONSE: Agreed.

13. On January 3, 2006, the contracting officer issued a final decision denying EAGLE's claim that USPS was obligated to provide EAGLE with approximately 1.25 billion pounds of mail annually. Compl. Attach. A.

RESPONSE: Agreed, except “if available” should be added at the end of the sentence to make it more accurate.

Respectfully submitted,

s/Frederick W. Claybrook, Jr.

Frederick W. Claybrook, Jr.
(Counsel of Record)
Daniel R. Forman
Jenny Kim

Crowell & Moring LLP
1001 Pennsylvania Avenue NW
Washington, D.C. 20004
(202) 624-2500
Attorneys for EAGLE

March 17, 2006

DCIWDMS: 2733995_1