IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| EVERGREEN AVIATION GROUND LOGISTICS ENTERPRISES, INC., Plaintiff, | |
| v. | No. 06-11C (Judge Allegra) |
| THE UNITED STATES, Defendant. | |

**DECLARATION OF J.DWIGHT YOUNG**

I, J. DWIGHT YOUNG, on oath and under penalty of perjury pursuant to 28 U.S.C. § 1746, state as follows:

1. I have personal knowledge of the facts set forth in this declaration.

2. The United States Postal Service (“USPS” or the “Postal Service”) employs me as a Manager, Transportation Portfolio. I have served in this capacity since April 1996.

3. During 2002 and 2003, I represented the Postal Service during negotiations with Evergreen Aviation Logistics Management (“EAGLE”) for the payment of a lump sum and the amendment of contract numbers SNET-01-PR, SNET-01-SER, and SNET-01-GLR (collectively referred to as the “Reformed Contract”). During this time, I possessed contracting authority to bind USPS.

4. EAGLE's representatives actively participated in negotiating all aspects of the Statement of Work ("SOW") of the Reformed Contract. Although both parties occasionally drafted certain provisions for circulation and discussion, USPS did not unilaterally revise any provision of the Reformed Contract's SOW without EAGLE's active participation and input.

5. During these negotiations, the parties employed a pay model which calculated anticipated revenues that EAGLE might receive based upon certain assumptions regarding variables including density, volume, and weight.

6. During discussions with EAGLE representatives, USPS representatives explained that calculations using the pay model were based upon the assumption that EAGLE might process 1.25 billion total pounds of mail annually across the 23 locations that EAGLE services under the Reformed Contract.

7. At no time did I or, to my knowledge, any Postal Service representative state or indicate in any way that USPS guaranteed EAGLE that USPS would supply 1.25 billion pounds of mail annually across the 23 locations that EAGLE services under the Reformed Contract.

8. I explained to EAGLE representatives, including Brian T. Bauer, EAGLE's President, and Daniel G. Bonham, EAGLE's

Director of Marketing that USPS would not guarantee 1.25 billion pounds of mail to EAGLE for processing. This understanding was finally affirmed and memorialized in the contract agreement between Evergreen and the United States Postal Service.

9. I and other Postal Service representatives insisted upon including in the Reformed Contract language plainly stating that USPS would not and did not guarantee EAGLE 1.25 billion pounds of mail for processing.

10. During my discussions with EAGLE representatives, including Mr. Bauer and Mr. Bonham, EAGLE's representatives stated that they understood that USPS had not guaranteed EAGLE 1.25 billion pounds of mail for processing under any circumstances.

11. To my knowledge, over the 23 locations covered by the Reformed Contract, the total amount of mail that USPS has available to supply to EAGLE pursuant to the Reformed Contract has not exceeded 1.25 billion pounds in any year for which the Reformed Contract has been in effect.

12. To my knowledge, USPS has not diverted to any competitor of EAGLE's any mail available for processing by EAGLE in the 23 locations that EAGLE services under the Reformed Contract. Although the Reformed Contract is not a requirements contract, USPS has not relied upon any other

mail processing service provider to fulfill the requirements covered by the Reformed Contract.

13. In the two years immediately following the effective date of the reformed contract, EAGLE has received approximately $95.4 million in revenue under these contracts.

Executed and affirmed this April 14 day of April 2006.

**/s/ J. Dwight Young**
J. Dwight Young
Manager, Transportation Portfolio